## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
### www.flmb.uscourts.gov

In re:

Paul J. Anderson and Sally C. Anderson,                    Case No.: 6:17-bk-01434-RAC
                                                           Chapter 7

       Debtors.

_____/

Garry P. Lodoen, individually and derivatively on
behalf of IDKB Holding, LLC, IDKB Marketing,
LLC and IDKB Research, LLC, and Darla K. Lodoen,

       Plaintiffs,

v.                                                         Adv. Pro. No.:  6:17-ap-00075-RAC

Paul J. Anderson and Sally Anderson,

       Defendants.

_____/

### <u>DEFENDANTS' MOTION TO DISMISS</u>

### NOTICE OF OPPORTUNITY TO
### OBJECT AND REQUEST FOR HEARING

**Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within 14 days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.**

**If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at George C. Young Federal Courthouse, 400 W. Washington Street, Orlando, FL 32801, and serve a copy on the movant's attorney, Samual A. Miller, Esq. Akerman LLP, 420 South Orange Avenue, Suite 1200, Orlando, Florida 32801, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, made applicable by Rule 7012, Federal Rules of Bankruptcy Procedure, Defendants Paul and Sally Anderson move the Court to dismiss the Complaint in this Adversary Proceeding.

## INTRODUCTION

The allegations in the Complaint do not allege a fraud, larceny, embezzlement, or other similar wrongdoing such that the Plaintiffs' alleged claims should be excepted from discharge.

As an initial matter, there are almost no specific allegations regarding Sally Anderson.  To the extent Sally Anderson is even mentioned, she is generally grouped together with the conduct of Paul Anderson.  Simply, it appears that Sally Anderson was an afterthought and there is no reason for Sally Anderson to be a party to this Adversary Proceeding.

Moreover, all derivatively-asserted claims should be dismissed for failure to follow the fundamental requirements of Rule 7023.1, Federal Rules of Bankruptcy Procedure.

Additionally, while there are multiple deficiencies with the claims premised on misrepresentation, false pretense, and fraud, the most notable deficiencies are (i) a complete lack of particularity and (ii) the fact that almost all of alleged statements were merely intentions of future acts, both of which require dismissal.

With respect to claims premised on fraud or defalcation while acting in a fiduciary capacity, there is no allegation that Paul or Sally Anderson were "fiduciaries" as that term is interpreted in the context of Section 523 of the Bankruptcy Code.  Further, there is no allegation of larceny (beyond the mere conclusory label) and Plaintiffs cannot allege a claim premised on embezzlement given that a partner or co–owner cannot embezzle partnership property as a matter of law.

Finally, the allegations in the Complaint do not sufficiently allege willful and malicious conduct.  With respect to conversion, the Complaint itself alleges that the purpose of any alleged conversion was to benefit the Andersons, not harm the Lodoens.  With respect to the purported defamation claim, in addition to the lack of alleged purpose to harm the Lodoens, there is a complete lack of credible damages required for such claims.

Accordingly, the Complaint should be dismissed.

## BACKGROUND[1]

The Complaint alleges a handful of purported misrepresentations resulting in a series of transfers of funds creating alleged debts that are non-dischargeable under the Bankruptcy Code.  While the Complaint contains a large number of irrelevant and inappropriate factual allegations (which are addressed in a motion to strike filed contemporaneously with this Motion), the following transfers and alleged misrepresentations are the only ones alleged in the Complaint:

### Alleged Transfers

| Timeframe | Amount of Transfer | Recipient of Transfer | Complaint Paragraph(s) |
|---|---|---|---|
| October 2014 and next several months | $100,000 investment | Not identified, though indicates it was for "the IDKB Companies." | 53 |
| November 1 (2015?)[2] - January 16 (2016?) | $28,000 loan | IDKB Marketing (pursuant to back-dated promissory note from IDKB Marketing to Lodoens) | 75 |
| Not alleged | $70,000 loan | IDKB Marketing (pursuant to back- | 81 |

---

[1] The Complaint alleges certain facts that are pertinent to this Motion.  Though certain of those facts are wholly inaccurate, as required by law, such facts are accepted as true *solely* for purposes of this Motion.  *See In re Faro Technologies Sec. Litig.*, 534 F. Supp. 2d 1248, 1255 (M.D. Fla. 2007).  Additionally, this Motion does not introduce or rely on any allegations outside the four corners of the Complaint.

[2] Unfortunately, the Complaint does not identify a year.  The assumption identified here is based on the context of the allegations in the Complaint.

| | | dated promissory note from IDKB Marketing to Lodoens | |
|---|---|---|---|

Though consisting of over 175 paragraphs, the Complaint actually contains only a handful

of alleged statements by either or both Defendants.  The alleged statements in the Complaint

relating to any of the above transfers, most of which are vague, do not contain dates, locations, or

methods of communication, and are mostly of future generic intentions to "use best efforts":

**Alleged Statements**

| Timeframe (if alleged) | Alleged Statement | Complaint Paragraph(s) |
|---|---|---|
| In the Summer 2014 | If Loedens provided funding to develop and market the App, Mr. Anderson would treat the Lodoens as business partners and Mr. Anderson would attempt to operate the proposed company in good faith, using his best efforts to generate a profit. | 29 |
| Not alleged | Although the band had no assets, it would earn compensation from IDKB Marketing in exchange for engaging in musical performances to be broadcast through the App, which the App's users would pay to view.  The band would subsequently be able to repay the promissory note. | 57 |
| November 2015 | IDKB Marketing would fail if the Lodoens did not contribute an additional $100,000. | 66 |
| October 2015 – January 2016 | The IDKB Companies were in a financial crisis.  If the Lodoens supplied additional funding to IDKB Marketing, Mr. Anderson would attempt to operate the IDKB Companies in good faith, using his best efforts to generate a profit for the IDKB Companies. | 67, 68 |
| Not alleged | Mr. Anderson would execute a promissory note, in his personal capacity, guaranteeing the funds that he requested the Lodoens lend to IDKB Marketing. | 72 |
| Not alleged | Mr. Anderson had personally raised and/or contributed hundreds of thousands of dollars to IDKB Marketing, and that these contributions equaled the Lodoens' financial contributions. | 79 |
| February 1, 2016 | The Lodoens were funding the loan too slowly, and that if they did not accelerate their cash advances, IDKB Marketing would fail. | 83 |

| June 7, 2016 ("after the Lodoens had fully funded the Note . . .") | Mr. Anderson had found additional investors for the App, and was in the process of negotiating a salaried position for himself with the investors' company. | 85 |
| July 21, 2016 | IDKB Marketing was out of money, and that Mr. Anderson had unilaterally decided to wind up the company. | 87, 88 |

The Complaint identifies the good faith, business uses and purposes surrounding Mr. Anderson's use of the funds identified above. *See, e.g.*, Complaint, 54, 55, 56, and 58. According to the Complaint, those appropriate business uses include, but are not limited to, audiovisual equipment, sophisticated computer programs to support the App's development, computer equipment, support services such as hiring of coders to program the App, and marketing. *Id.*

## ARGUMENT

A court reviewing a motion to dismiss under Rule 12(b)(6) accepts the plaintiff's material allegations as true, but conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Smith v. Williams*, 819 F. Supp. 2d 1264, 1269 (M.D. Fla. 2011) (quoting *Iqbal*, 556 U.S. at 678).

The legal standard to be applied when evaluating a motion to dismiss is one of plausibility—"a complaint must state a claim that is plausible on its face" and incorporate "sufficient factual matter" in support of the claim. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Satisfying this standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 687 ("Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."). Rather, for a claim to be facially plausible, a plaintiff

must plead "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

## Section 523 Is Strictly Construed<br>Against the Objecting Creditor<br>and in Favor of the Debtors

In determining whether a particular debt falls within one of the exceptions of Section 523 of the Bankruptcy Code, the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor. *See In re Vega*, 503 B.R. 144, 146 (Bankr. M.D. Fla. 2013) (J. Jennemann) ("Exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor."); *In re Miller*, 39 F.3d 301, 304 (11th Cir. 1994). As Judge May explained in *In re McClung:*

> Courts generally construe the statutory exceptions to discharge "liberally in favor of the debtor," and recognize that " '[t]he reasons for denying a discharge ... must be real and substantial, not merely technical and conjectural.' " In re Miller, 39 F.3d 301, 304 (11th Cir. 1994) (citations omitted).

*In re McClung*, 335 B.R. 466, 472 (Bankr. M.D. Fla. 2005).

Significantly, there are no allegations in the Complaint that the Lodoens ever took any steps to protect their investment or loan – even though they were supplying money well after much of the conduct about which Plaintiffs now complain. *See generally, In re Vega*, 503 B.R. at 154 (noting that plaintiff "failed to take any act to protect his investments . . . never got a security interest or even a promissory note . . . [and] continue to lend money . . . when he remained unpaid on earlier loans."). As the Complaint make clear, the business venture failed, there are bitter feelings between the parties, and, as a result, the Lodoens now allege a fraudulent scheme. Nevertheless, the mere existence of a failed business venture does not give rise to claims under Section 523 of the Bankruptcy Code.

## Sally Anderson Should Be Dismissed
## As a Party Given the Lack of Alleged Wrongdoing

The Court should dismiss the Complaint as to Sally Anderson.  There are no properly pled allegations of any wrongdoing by Sally Anderson and her inclusion as a defendant in this Adversary Proceeding appears to be aimed solely at trying to cover both spouses.  Imputation of wrongdoing and liability to a spouse without independent fraudulent or wrongful conduct by that spouse is not permitted under Section 523 of the Bankruptcy Code.  *See In re Nascarella*, 492 B.R. 327, 339-40 (Bankr. M.D. Fla. 2013) (J. Williamson) (refusing to impute liability under Section 523 to family member absent misconduct by innocent family member); *In re Gordon*, 293 B.R. 817, 828 (Bankr. M.D. Ga. 2003) ("The Court is not persuaded that intent to defraud may be imputed to Defendant under agency principles either in the context of a business relationship or a spousal relationship. The Court is not persuaded that Defendant and her husband operated the farm as a business partnership. . . Defendant did not know about the false financial information on the loan application until after she filed for bankruptcy relief."); *In re Tsurukawa*, 258 B.R. 192, 198 (B.A.P. 9th Cir. 2001) (holding that unless debtor-spouse knowingly participated in her husband's fraud, or was his business partner and stood in agency relationship with him, marital relationship alone was not sufficient predicate for imputation of husband's fraud to debtor.).  There are no allegations that Sally Anderson engaged in any independent wrongful conduct; the most alleged about Sally Anderson is that she was present on phone calls without the required detailed allegations of particular misrepresentations (*i.e.*, lack of particularity addressed below) or participation in any scheme.  Sally Anderson's inclusion appears to be an afterthought and the Court should dismiss all claims against Sally Anderson.

## The Rules Regarding Derivative Claims
## Were Not Followed and the Corporate Plaintiffs Lack Standing

The Court should dismiss all derivatively asserted claims by the corporate Plaintiffs (*i.e.*, IDKB Holding, LLC; IDKB Marketing, LLC; and IDKB Research, LLC) because Plaintiffs failed to satisfy the fundamental requirements of the applicable Rules and there is a clear lack of standing.

The Lodoens ignored the clear requirements of the applicable Rules regarding derivative claims, which failure requires dismissal.  Rule 23.1, Federal Rules of Civil Procedure, made applicable by Rule 7023.1, Federal Rules of Bankruptcy Procedure, contains several fundamental pleading requirements that must be satisfied before a claim may be asserted derivatively.  Pursuant to those fundamental pleading requirements, the Complaint must be verified and state with particularity all efforts taken by the plaintiff to obtain the desired action from the corporate authority and the reasons for not obtaining the action or not making the effort.  Fed. R. Civ. P. 23.1.  Specifically, the Rules provide in pertinent part:

> (b) PLEADING REQUIREMENTS. The complaint must be verified and must:
>
> (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;
>
> (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and
>
> (3) state with particularity:
>
> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
>
> (B) the reasons for not obtaining the action or not making the effort.

*Id.*  Despite the clear, explicit requirement, the Complaint is not verified by the Lodoens. Additionally, there is a lack of particularity regarding any effort by the Lodoens to obtain the desired action from the corporate authorities (*i.e.*, manager(s) of the subject LLCs).  For example, there are no allegations of letters, phone calls, or communications of any kind (including date,

time, location, method of communication, *etc*.) regarding efforts seeking an accounting, an explanation, payment of any purported money owed to the corporate entities, *etc*.  Accordingly, the fundamental requirements of Rule 7023.1 have not been satisfied and the derivatively asserted claims with respect to the corporate entities (*i.e.*, Counts VI, VII, and VIII) should be dismissed.

Furthermore, those corporate entities do not have standing to assert claims in this Adversary Proceeding.  By explicit terms, Sections 523(a)(2),(4), and (6) of the Bankruptcy Code are limited to creditors to whom a debt is owed.  11 U.S.C. § 523(c)(1); Fed. R. Civ. P. 4007(a). The corporate entities listed as derivative plaintiffs are not creditors – those entities do not have a judgment against the Andersons, are not listed as creditors in the Schedules, and have never filed a proof of claim.  Accordingly, the Complaint with respect to the corporate entities (*i.e.*, Counts VI, VII, and VIII) should be dismissed.

### The Complaint Lacks
### the Required Particularity
### for Fraud-Based Claims

The Court should dismiss the claims in the Complaint premised on false pretenses, false representation, or actual fraud (*i.e.*, Counts I and VII) because allegations in this regard are not made with particularity.  Rule 9(b), Federal Rules Of Civil Procedure, made applicable by Rule 7009, Federal Rules of Bankruptcy Procedure, applies to claims made under Section 523(a)(2)(A) of the Bankruptcy Code.  *See In re Robinson-Vinegar*, 561 B.R. 562, 565 (Bankr. N.D. Ga. 2016). The Federal Rules of Civil Procedure provide in pertinent part:

> (b) FRAUD OR MISTAKE; CONDITIONS OF MIND. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).  Thus, to state a claim to except a debt from discharge on the grounds of false pretenses, false representation, or actual fraud theory, the creditor must specifically plead each

specific instance of fraud by stating the identity of the person making the representation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated. *See Id.; In re Robinson-Vinegar*, 561 B.R. at 565; *In re Young*, 428 B.R. 804, 813 (Bankr. N.D. Ind. 2010).

The Complaint completely fails to satisfy this heightened pleading standard, which is a fundamental requirement to proceed with a claim under Section 523(a)(2)(A) of the Bankruptcy Code. The allegations do not contain the required identity of the person making the representation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated. Instead, the Complaint contains vague and general allegations regarding purported misrepresentations. While such level of pleading may be sufficient under Rule 8 for other types of claims, it is insufficient for claims under Section 523(a)(2)(A) of the Bankruptcy Code. Accordingly, the Court should dismiss Counts I and VII of the Complaint.

Additionally, the Complaint in many instances groups the Defendants together with respect to the allegations. While such practice is popular with respect to securities litigation, commonly known as the group pleading doctrine, such pleading practice is particularly inappropriate with respect to claims under Section 523(a)(2)(A) of the Bankruptcy Code where particularity is required in pleading. As noted above, there are no allegations pled with particularity with respect to Sally Anderson and this group pleading practice may have been a further attempt to cure the lack of any claim against Sally Anderson. In any event, such group pleading practice, when particularity is required, is inappropriate and the Court should dismiss those claims.

Finally, the Lodoens never explain which transfers were made pursuant to which alleged misrepresentation. Significantly, Section 523 of the Bankruptcy Code, unlike Section 727, addresses particular debts and not discharge in general. Thus, it is critical for the Defendants'

ability to respond to the Complaint that the Andersons be notified of which particular debts are at issue with respect to what purported conduct. The lack of pleading in that respect makes it difficult, if not impossible, to address the allegations. Accordingly, the Court should dismiss Counts I and VII of the Complaint.

**Statements of Future Conduct
and Mere Non-Performance are
Not Sufficient for a Fraud-Based Claim**

The Court should dismiss the claims predicated on fraudulent conduct or misrepresentations (*i.e.*, Counts I, II, VI, and VII) because the allegations regarding the alleged misrepresentations are premised on promises of future acts, which cannot be the basis for a fraud claim. Under applicable case law, it is generally held that statements regarding an intention to perform a future act are not the basis for a claim under Section 523(a)(2)(A) of the Bankruptcy Code. *See, e.g., In re Cascio*, Adv. No. 3:16-ap-108, 2017 WL 1273902 (Bankr. M.D. Fla. April 4, 2017). As Judge Glenn explained a couple months ago in *In re Cascio*:

> Additionally, statements of intent to perform an act in the future generally do not form the basis of a false representation under §523(a)(2)(A).

*Id.* citing *In re Vega*, 503 B.R. 144; *see also In re Boggus*, 479 B.R. 147, 155 (Bankr. N.D. Ga. 2012); *see also In re Gibson*, 450 B.R. 227, 230 (Bankr. N.D. Ga. 2010) (stating that "the case of a broken promise" or simple failure to repay "does not in and of itself establish fraud under Section 523(a)(2)(A)."). Almost all of the alleged misrepresentations consist of alleged promises by Mr. Anderson to "us[e] his best efforts to generate a profit" and the like. *See, e.g.*, Complaint ¶¶ 29, 67, and 68. These statements cannot form the basis for a fraud-based claim under applicable law. As a practical matter, were a creditor able to successfully argue that a debt is not dischargeable simply because a debtor failed to follow through on a future promise to pay or a future promise of

11

success, most bankruptcy debts would never be discharged.  Accordingly, the Court should dismiss

Counts I, II, VI, and VII of the Complaint.

### <u>There is Not a Fiduciary Relationship</u><br><u>Alleged as That Term is Used In Section 523</u>

The Court should dismiss the claims premised on a fiduciary duty or relationship (*i.e.*, Counts II and VI) because there was no fiduciary duty or relationship as that term is used in Section 523(a)(4) of the Bankruptcy Code.  For purposes of Section 523(a)(4) of the Bankruptcy Code, the definition of "fiduciary" is narrowly construed; as the 11th Circuit Court of Appeals has explained:

> Although § 523(a)(4) establishes an exception to dischargeability for debts for ''defalcation while acting in a fiduciary capacity,'' this exception is a narrow one.  ''The Supreme Court has consistently held that the term 'fiduciary' is not to be construed expansively, but instead is intended to refer to 'technical' trusts.''

*In re Fernandez-Rocha*, 451 F.3d 813, 817 (11th Cir. 2006).  In fact, in the context of Section 523(a)(4), to establish a fiduciary relationship, there must be allegations of segregated trust property, identification of a beneficiary, and specific trust duties.  As explained by Judge Jennemann:

> A claim under Section 523(a)(4) stands only when there is an express or technical trust, which exists when there is: (1) a segregated trust res; (2) an identifiable beneficiary; and (3) affirmative trust duties established by contract or by statute.  The existence of an express or technical trust is required for a fiduciary relationship. (internal citations omitted).

*In re Cuenant*, 339 B.R. 262, 274 (Bankr. M.D. Fla. 2006).  In the Complaint, the Lodoens attempt to allege and argue that a fiduciary relationship arises from the business partnership of the parties.  While such a relationship may give rise to a fiduciary relationship for purposes of certain state law claims, such a relationship is wholly insufficient to create liability under Section 523(a)(4) of the Bankruptcy Code.  Accordingly, the Court should dismiss Counts II and VI of the Complaint.

## There are Not Allegations of Larceny or the Fundamental Elements of Embezzlement

The Court should dismiss any claims premised on larceny or embezzlement (*i.e.*, Counts III and VIII).

As an initial matter, any claim premised on larceny should be dismissed as there are no allegations of larceny (beyond mere conclusory labels).  Larceny involves taking of property that is unlawful at the time of the taking.  All allegations in the Complaint allege that the Lodoens transferred funds as an investment or loan; there are no allegations of any unlawful taking.  Clearly, the use of the term "larceny" was used in order to "cover all the bases," but is not a basis for allowing such a claim to continue beyond the pleadings stage.

Additionally, the Andersons cannot be liable for embezzlement (as it relates to the Lodoens personally) because the Lodoens allege that the funds were invested in or loaned to the corporate entities of which both Mr. Anderson and Mr. Lodoen had an ownership interest. As explained by Judge Jennemann:

> In addition, an embezzlement claim requires [Plaintiff] to show that the property allegedly embezzled was his property. One cannot embezzle one's own property nor can a partner embezzle partnership property because he is a co-owner. (internal citations omitted).

*In re Cuenant*, 339 B.R. 262, 277 (Bankr. M.D. Fla. 2006).  In so far as the funds were invested in or loaned to one or more corporate entities in which both the creditor/investor and the debtor were owners, the creditor/investor cannot proceed with a claim premised on embezzlement.  The invested and loaned funds no longer belonged to the Lodoens; instead, the owner of those funds was the corporate entity, of which the Complaint alleges on multiple occasions both Mr. Lodoen and Mr. Anderson were co-owners.  *See, e.g.*, ¶ 48. Simply, there is no allegation of direct ownership of those funds by the Lodoens and, thus, no viable claims of embezzlement by the Lodoens.

Moreover, for purposes of Section 523(a)(4) of the Bankruptcy Code, the disbursal or use of the funds must be without explanation of reason or purposes.  *In re Kelley*, 84 B.R. 225, 231 (Bankr. M.D. Fla. 1988) ("Furthermore, the showing of fraudulent intent which is a prerequisite to a finding of embezzlement under Section 523(a)(4) may be negated by a showing that the defendant used such funds openly and without concealment.").  As explained in the Lodoens' own Complaint, the reason and purpose of any use of the funds was wholly appropriate and well known to the Lodoens – audiovisual equipment, sophisticated computer programs to support the App's development, computer equipment, support services such as hiring of coders to program the App, and marketing.  *See, e.g.*, Complaint, 54, 55, 56, and 58.  While the Lodoens may not be happy with the outcome of the uses of such funds, there is not (and cannot be) any allegation that the funds were used or disbursed without explanation of a reason or purpose.  Accordingly, the Court should dismiss any claims premised on larceny or embezzlement.

### The Claims Based on Conversion Should be Dismissed Because the Complaint Alleges that the Purpose of Any Purported Conversion was to Benefit Andersons Instead of Harming Lodoens

The Court should dismiss any claim predicated on conversion (*i.e.*, Count IV) because there are no allegations that the purpose of any purported conversion was to harm or injure the Lodoens; in fact, the allegations in the Complaint allege that the purpose of any conversion was to benefit the Andersons.  The plain language of Section 523(a)(6) of the Bankruptcy Code requires that any alleged misconduct be "willful" and "malicious," meaning the purpose must have been to cause injury to another, not benefit the debtor.  *See* 11 U.S.C. § 523(a)(6); *Kawaauhau v. Geiger*, 523 U.S. 57, 61-63 (1998).  As the United States Supreme Court has succinctly explained:

> The word ``willful'' in (a)(6) modifies the word ``injury,'' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.

*Kawaauhau v. Geiger*, 523 U.S. at 61.  As the court explained in a similar context in *In re Kidd*,

219 B.R. 278 (Bankr. D. Mont. 1998):

> The problem with conversion cases … is that rarely are the debtors
> acting out of a desire to injure the creditors, even though the injury
> to the creditor, although not desired, is almost always substantially
> certain to result from a debtor's actions. Thus, the key in conversion
> cases is to analyze each set of circumstances on a case-by-case basis
> to determine whether the conversion is in the nature of an intentional
> tort or whether the conversion is a result of a negligent or reckless
> tort – but not willful or malicious.

*Id.* at 284.  While the Complaint alleges that the Lodoens suffered an injury, the Complaint never

alleges that the intention or purpose of any purported conversion was to cause harm to the Lodoens.

In fact, the Lodoens' own Complaint explained that the purpose of the alleged conversion was to

benefit the Andersons.  *See* Complaint, ¶ 138 ("Mr. Anderson converted the unused portion of the

retainer for his own purposes.").  Accordingly, the Court should dismiss any claims premised on

any alleged conversion and the Lodoens should not be permitted to amend to "change their story"

in this regard.

### The Claim Premised on Defamation is Insufficiently Pled

The Court should dismiss any claim based on defamation (*i.e.*, Count V) due to a failure to

sufficiently allege plausible damages.  As explained by Judge Byron:

> In order to prevail on a claim for defamation in Florida, a plaintiff
> must prove each of the following elements: "(1) publication; (2)
> falsity; (3) actor must act with knowledge or reckless disregard as to
> the falsity on a matter concerning a public official, or at least
> negligently on a matter concerning a private person; (4) actual
> damages; and (5) statement must be defamatory." Jews for Jesus,
> Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008).

*Gov't Employees Ins. Co. v. KJ Chiropractic Ctr. LLC*, 6:12-cv-1138 ORL 40 DAB, 2015 WL

12838341, at *2 (M.D. Fla. Jan. 29, 2015).  While the Lodoens make a generic conclusory

allegation regarding damages, there is no credible or plausible allegation regarding how statements to a fan club result in economic damages.

Moreover, this claim suffers from the exact same defect as the conversion claim discussed above – while the Complaint alleges that the Lodoens suffered an injury, the Complaint never alleges that the intention or purpose of any purported defamation was to cause harm to the Lodoens. In fact, as with the conversion allegations above, the Complaint alleges that the intention and purpose of such defamatory comments were to aid Mr. Anderson, not harm the Lodoens. *See* Complaint ¶ 102 ("On information and belief, Mr. Anderson seeks Mr. Lodoen's expulsion from the VWO because Mr. Anderson believed his efforts to market the App to VWO membership would be more successful in Mr. Lodoen's absence."). Accordingly, the claim premised on defamation should be dismissed and, again, the Lodoens should not be permitted to amend to "change their story" in this regard.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint. While leave to amend is typically provided to a Plaintiff upon dismissal of a first filed Complaint, given the lack of any viable claims against her, the Andersons request that any claims against Sally Anderson be dismissed *with prejudice*.

WHEREFORE, Defendants respectfully request that the Court enter an order:

     i.     dismissing the Complaint;

     ii.     dismissing all claims against Sally Anderson with prejudice; and

     iii.     granting such further relief as is just and equitable.

Dated: July 13, 2017.                        Respectfully submitted,

                                             /s/  Samual A. Miller
                                             Jules S. Cohen, Esquire
                                             Florida Bar Number: 014520
                                             Samual A. Miller, Esq.
                                             Florida Bar Number:  34991
                                             **AKERMAN LLP**
                                             Post Office Box 231
                                             Orlando, FL  32802-0231
                                             Phone:  (407) 843-7860
                                             Fax:  (407) 843-6610
                                             Email: jules.cohen@akerman.com
                                             Email: samual.miller@akerman.com
                                             *Attorney for Paul J. Anderson and Sally*
                                             *Anderson*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on July 13 2017, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to

all attorneys of record.

                              By: /s/ Samual A. Miller
                                  Samual A. Miller, Esquire